IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)

| | | |
|---|---|---|
| Millennium TGA, Inc. § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | C.A. No. 4:11-cv-04501 | |
| § | Judge: Hon. Vanessa D. Gilmore | |
| John Doe § | | |
| Defendant. § | | |
| § | | |
| § | | |

## MOTION FOR PROTECTIVE ORDER

COMES NOW a non-party Doe identified by IP address 71.192.52.111 and listed as the 532nd out of 938 alleged "co-conspirators" in Exhibit B of Plaintiff's Original Petition (D.E. 1-2) (hereinafter referred to as non-party Jane Doe 2) and petitions this Honorable Court to grant this Motion for Protective Order and prevent the production of personally identifying information including the name, address, telephone number and e-mail address of non-party Jane Doe 2, and all other similarly situated non-party Does, by the Custodian of Records, Comcast Cable Communications, LLC:

Pursuant to Fed. R. Civ. P. 26 and 45(c)(3)(A), non-party Jane Doe 2 through Counsel files this Motion for Protective Order[1] regarding a subpoena compelling the disclosure of personally identifying information served upon Custodian of Records, Comcast Cable Communications, LLC because: 1) This Court does not have personal jurisdiction over non-party Jane Doe 2 and

---

[1] Non-party Jane Doe 2 is identified as one of 938 alleged "co-conspirators" operating in concert with Defendant John Doe over a period from October 10, 2011 to December 5, 2011 and is neither a party to, nor has been served in this action, therefore only the present Motion is filed with the Court. In the event the case is permitted to move forward and non-party Jane Doe 2 is actually named and served, non-party Jane Doe 2 shall file an appropriate response within the mandatorily proscribed time period.

Millennium TGA, Inc. v John Doe        Motion for Protective Order – Jane Doe 2        Page 1

4:11-cv-04501

potential joinder with Does who may reside in the District is improper; 2) The subpoena requires disclosure of protected information and subjects non-party Jane Doe 2 to undue burden; and, 3) The subpoena seeks information that is not relevant to the case at bar in that non-party Jane Doe 2 has neither: a) Been accused of any infringing activity; nor, b) Has any discoverable evidence regarding the identity of Defendant John Doe.

## INTRODUCTION

1.  Plaintiff filed suit in the Southern District of Texas (Civil Action 4:11-cv-04501) against one unnamed John Doe Defendant. In its suit, Plaintiff identified 938 alleged co-conspirators. All of these non-party Does are identified only by Internet protocol (IP) addresses. Plaintiff alleges that collectively these individuals have, "conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy," of Plaintiff's pornographic video in violation of Plaintiff's copyright D.E. 1 ¶35.

2.  After filing this action in this District, a subpoena issued under the imprimatur of the U.S. District Court for the District of Columbia was served upon, among others, Custodian of Records, Comcast Cable Communications, LLC to compel the disclosure of personally identifying information including the name, physical address, telephone number, and e-mail address of non-party Jane Doe 2.

3.  Plaintiff asserts that it may, "after learning additional facts, to seek leave of the Court to amend this complaint to include John Doe's co-conspirators as defendants pursuant to Fed. R. Civ. P. 20(a)(2) so long as the Court has jurisdiction over those individuals." D.E. 1 ¶38.

4.  At the time of the alleged acts, non-party Jane Doe 2 was a citizen and resident of the State of Connecticut.

5.  Pursuant to Rule 26, the Court should issue a protective order to protect non-party Jane

Doe 2 from, "annoyance, embarrassment, oppression, or undue burden or expense," because Plaintiff cannot demonstrate that the discovery sought will lead to the development of any admissible, relevant evidence of copyright infringement in its present action against Defendant John Doe. Fed. R. Civ. P. 26(c)(1). Moreover, the Court should limit or prohibit discovery because, "the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, Plaintiff has not established any specific need or related benefit that this discovery would provide, other than to perpetuate another in a long-line of extortionate extra-judicial collection schemes masquerading as lawsuits the aim of which is to coerce "settlement payments" from non-party Does it merely alleges were Defendant John Doe's "co-conspirators." The heavy imbalance between reputational harm to non-party Jane Doe 2 and lack of legitimate benefit to Plaintiff is plain.

## ARGUMENT

6.     This Court, like many other Federal District Courts before, finds itself being used to effectuate yet another mass intimidation and collection scheme by producers of pornographic video materials. Plaintiff Millennium TGA, Inc. is attempting to avail itself of the time-tested process of misusing the expedited discovery process to secure the release of identifying information for a number of unrelated Does in an effort to dun those individuals into paying a "settlement" for allegedly downloading a particular pornographic video. Including this action, various producers of pornographic videos represented by Counsel for Plaintiff have, by a cursory count, filed approximately eighteen "mass copyright" infringement actions in this District, including four on March 6, 2012 alone. Of these eighteen actions, seven have since been

dismissed. In those seven actions, plaintiffs used expedited discovery to seek the identities of approximately 465 Does. Two of the Does thus unmasked were identified – but not named – in subsequent "single" Doe actions (i.e. *First Time Videos, LLC v. John Doe*, 1, No. 4:12-cv-00535 (S.D. Tex.) and *Pacific Century Intl., Ltd. v. John Doe*, 1, No. 4:12-cv-00536 (S.D. Tex.)). A review of the docket sheets for the seven closed actions indicate that apparently none of the Does whose identities were sought were ever named and served in the underlying action. Of the two subsequent single Doe actions, both also appear to have been dismissed before any discovery was undertaken and either Doe, or anyone else for that matter, was named and served. It thus appears that of the approximately 465 Does whose identities were sought *no infringers were ever identified*.

7.     But this is unsurprising, since identifying infringers is impossible using IP addresses and the personally identifying information derived from them. Nevertheless, Plaintiff asserts it, "cannot ascertain John Doe's or his co-conspirators' actual identities without information from their Internet Service Providers ("ISPs")." D.E. 1 ¶4. But this is factual misstatement. In an opinion bearing on four similar "mass copyright" actions involving pornographic works and the BitTorrent protocol (granting service of subpoena as to *only one* un-named Doe in three and quashing subpoenas directed to "several putative Doe defendants" in the fourth), Magistrate Judge Gary R. Brown of the U.S. District Court for the Eastern District of New York noted that, "Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper." Or. of May 1, 2012, *In Re: BitTorrent Adult Film Copyright Infringement Cases*, 8, No. 2:11-cv-03995-DRH-GRB (E.D.N.Y.) [hereinafter *BitTorrent Order*] attached as *Exhibit A*.

Explaining the fundamental impossibility of determining the identity of the actual infringer from the type of discovery Plaintiff presently seeks, the court explained that, "it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call." *BitTorrent Order* at 6.

8.     Of the eighteen "mass copyright" infringement cases filed by Counsel for Plaintiff in this District, seventeen of the cases were, or are, of the same cloth: to wit, plaintiff versus a multiplicity of unnamed Doe defendants. This mimics the pattern practiced in well over a hundred such cases filed across the U.S. One media report asserts that over 220,000 individuals have been sued since mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works.[2] The "business model" behind this process was succinctly explained by one court:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements – a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers. *MCGIP, LLC v. Doe*, No. 4:11-cv-2331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011).

In cases like these, one or more Does will usually come forward and resist production of personally identifying information citing one of two theories: 1) Out of district Does will argue that they cannot be brought within the personal jurisdiction of the court; and, 2) In-district Does will argue that joining them with other Doe Defendants is improper under FRCP 20(a)(2). While

---

[2] *See,* http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk

some courts have rejected these arguments an ever increasing number have accepted them.[3,4] Indeed, Plaintiff Millennium TGA, Inc. has firsthand knowledge of this trend having had one of its cases filed in another district dismissed for these reasons. *See*, *Millennium TGA v. Doe*, No. 1-10-cv-5603, 2011 WL 7444064 (N.D. Ill. Sept. 26, 2011) (Manning, J.) (dismissing case for lack of personal jurisdiction and improper venue after previous order severing all other potential defendants). Magistrate Judge Bernard Zimmerman of the Federal District Court for the Northern District of California, illustrated this modern trend when he dismissed the assertion that participation in a BitTorrent "swarm" somehow invoked the permissive joinder rule when he severed all but one of the 5,011 defendants:

> Most recent decisions of this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P [peer-to-peer] cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence. Or. of Sep. 6, 2011, *On the Cheap, LLC v. Does 1-5011*, 3, No. 3:10-cv-04472 (N. D. Cal.) [hereinafter *Cheap Order*] attached as *Exhibit B*.

---

[3] For courts rejecting these defenses *see, e.g.*, *First Time Videos*, 276 F.R.D. at 255 (Bucklo, J.) (holding that joinder is appropriate and the court has personal jurisdiction); *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. Aug. 9, 2011) (Castillo, J.) (denying motion to dismiss and motion to sever); *MGCIP v. Does 1–316*, No. 1-10-cv-06677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) (Kendall, J.) (denying motion to dismiss for lack of personal jurisdiction).

[4] For courts accepting these defenses *see, e.g.*, *Millennium TGA v. Doe*, No. 1-10-cv-5603, 2011 WL 7444064 (N.D. Ill. Sept. 26, 2011) (Manning, J.) (dismissing case for lack of personal jurisdiction and improper venue after previous order severing all other potential defendants); *On the Cheap, LLC. v. Does 1–5011*, No. 3:10-cv-4472, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (severing defendants); *Digiprotect USA Corp. v. Does 1–266*, No. 1:10-cv-8759, 2011 WL 1466073 (S.D.N.Y. Apr. 13, 2011) (denying discovery of the identities of defendants whom plaintiff had not shown to be subject to the court's jurisdiction); Or., *W. Coast Prods., Inc. v. Does, 1–2010,* No. 3-10-cv-0093 (N.D.W.V. Dec. 16, 2010) (severing defendants and allowing amended complaints only against individuals with IP addresses in West Virginia); *CP Prods., Inc. v. Does 1–300*, No. 1-10-cv-6255, 2011 WL 737761, at *1 (N.D. Ill. Feb. 24, 2011) (Shadur, J.) ("[T]here is no justification for dragging into an Illinois federal court, on a wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist and – more importantly – as to whom [plaintiff's] counsel could readily have ascertained that fact.").

Unsurprisingly, Plaintiffs reject this analysis. Judge Brown notes, "Plaintiffs tout the fact that, 'joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in forty reported opinions and has been permitted in district courts across the country.'" *BitTorrent Order* at 20. Judge Brown then dissects this assertion: "However, due to plaintiffs' litigation strategy, which includes avoiding review on the merits except at a preliminary, ex parte stage, these determinations were made without any factual record by judges unaware of the highly individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm tactics, both of which strongly militate against allowing joinder in these mass actions." *Id.* at 20-21.

9.      As to "evidence of strong arm tactics," Judge Brown notes that the same coercive approach has been used in numerous cases: "Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation."[5] One of these courts concluded, "This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does." *BitTorrent Order* at 10 *citing Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011). Judge Brown recites the following undisputed sworn testimony proffered by a Doe defendant in another case:

> Upon receipt of the Complaint, I reached out to Plaintiff and spoke to a self-described

---

[5] *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6 (E.D. Va. Oct. 5, 2011); *cf. Patrick Collins, Inc. v. Does 1-58*, 2011 U.S. Dist. LEXIS 120235, at *6 (E.D. Va. Oct. 5, 2011) (same); and, *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) (same). In connection with these cases Judge Brown notes that, "Counsel for K-Beech and Patrick Collins, Inc. was directed to show cause why Rule 11 sanctions should not be imposed for this conduct, but ultimately sanctions were not imposed." *BitTorrent Order* at 10 n.6.

"Negotiator" in an effort to see if I could prove to them (without the need for publicly tying my name to the Complaint) that I had nothing to do with the alleged copyright infringements. The Negotiator was offered unfettered access to my computer, my employment records, and any other discovery they may need to show that I was not the culpable party. Instead, the Negotiator refused and was only willing to settle the Complaint for thousands of dollars. While the Negotiator said on October 24, 2011 that he would check to see if he could come down from the thousands of dollar settlement amount, the Negotiator has not responded to two voice mails that were left on October 25, 2011. Notably, the Negotiator justified the settlement amount because, in part, I would incur legal fees in hiring an attorney. *BitTorrent Order* at 9.

10.     Because of widespread use of tactics such as these, courts have become more receptive to defendant Does' complaints regarding misjoinder. As a result, "mass copyright" plaintiffs have adopted new strategies and one of these new strategies is on display in this case. Specifically, Plaintiff in the present matter sues only one John Doe – who is putatively a resident of the District – and identifies 938 "co-conspirators." *See* D.E. 1-2. While structured differently than the large bulk of "mass copyright" cases, the ultimate goal – to quickly and efficiently extract monetary settlements from hundreds of Does, is the same.

11.     However, Plaintiff's overbroad discovery request is fatally defective because the discovery sought is irrelevant to the case at bar. Discovery is appropriate only if the information sought is relevant, i.e. that it is, "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Plaintiff justifies its request for personally identifying information associated with 938 non-party Doe "co-conspirators" apparently on the ground that all co-conspired to infringe Plaintiff's copyright by putatively downloading the same file using the BitTorrent peer-to-peer file transfer system. But to have any relevance on the matter at hand, i.e. a copyright infringement and civil conspiracy claim against Defendant John Doe, the discovery requested must have some bearing on the claims asserted *against Defendant John Doe*. This nexus Plaintiff cannot show.

12.     As to Plaintiff's copyright infringement claim, the requested discovery cannot be calculated to discover whether John Doe did, or did not, infringe Plaintiff's copyright because his alleged "co-conspirators" have no discoverable information bearing on this question. Assuming, ad arguendo, that all 938 alleged "co-conspirators" downloaded complete copies of Plaintiff's work and *are still to today* continuing to share that work in the self-same BitTorrent swarm, that fact would have no conceivable bearing on whether Defendant John Doe downloaded Plaintiff's copyrighted work. This is because the BitTorrent "client program" that all 932 "co-conspirators" necessarily used to download Plaintiff's work does not record information regarding the IP addresses of individuals with whom the downloader *shared information.* One court explained this point: "BitTorrent users remain anonymous to other BitTorrent users, and have no connection to them beyond the mere fact that they downloaded the same file." Or. of Mar. 30, 2012, *Pac. Century Int'l., Ltd. v. John Does 1-37*, 9-10, No. 1:12-cv-01057, (N. D. Ill.) [hereinafter *Consolidated Order*] attached hereto as *Exhibit C*. Collecting this kind of information is something only specialized forensic tools (such as those Plaintiff's agents purportedly have created) can do and Plaintiff already claims to have this information. D.E. 2-1 ¶¶10, 15.

13.     As to Plaintiff's civil conspiracy claim, Plaintiff fails to plead that there was an agreement among any of the alleged "co-conspirators" and thus this claim must fail. *See Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011)(Darrah, J.)("Hard Drive's conspiracy claim fails because it has not pled the existence of an agreement among Does 1-55 to commit copyright infringement."). Plaintiff avers that, "In using the peer-to-peer BitTorrent file distribution method, John Doe and his co-conspirators engaged in a concerted action with each other and yet unknown individuals to reproduce and distribute

Plaintiff's Video by exchanging pieces of the Video file in the torrent swarm," and that, "Participants in the torrent swarm conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy of the file." D.E. 1 ¶¶ 33, 35. Nevertheless, Plaintiff never asserts that these "co-conspirators" agreed amongst themselves to do so. This is unsurprising. One court explained why: "that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011).

14.     It is thus facially obvious that Plaintiff does not seek information about non-party IP addresses for the purpose of litigating their current claim against Defendant John Doe. Instead, the Plaintiffs must intend to: 1) Either sue the individuals whose identity they uncover; or, 2) Negotiate a settlement (trading on the salacious nature of the material involved) with those individuals. Given the observation outlined at ¶6 *supra*, (that of the seven now dismissed mass copyright actions filed in this District by counsel for the Plaintiff seeking the identities of nearly 465 unnamed Doe defendants apparently none were named and served in the underlying actions) the latter seems far more likely. When evaluating relevancy in these situations, "a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978). Thus, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id.* That is precisely the situation here. If Plaintiff wishes to sue non-party Does in subsequent proceeding, then the requested discovery is improper. Similarly, if Plaintiff wishes to negotiate settlements with non-party Does by means of threatening to subsequently sue them in

another proceeding, then that too renders discovery improper. Of course, none of this precludes Plaintiff from exercising its legitimate rights. Plaintiff may properly sue each IP address individually in the federal judicial district where the IP address is located.

15.     A number of similar mass-copyright cases involving pornographic works (in which a plaintiff sues just one Doe putatively located in the district but seeks discovery of personally identifying information in connection with numerous "co-conspirators" nationwide) have been filed throughout the U.S. Recently, three of these cases – two from California and one from Virginia – were consolidated.[6] When denying in part a motion to compel two ISPs to produce identifying personal information associated with alleged "co-conspirators," Chief Judge James F. Holderman of the U.S. District Court for the Northern District of Illinois, noted:

> BitTorrent users remain anonymous to other BitTorrent users, and have no connection to them beyond the mere fact that they downloaded the same file. It is therefore not a reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants. *Consolidated Order* at 9-10.

Judge Holderman continued:

> What the plaintiffs may not do, however, is improperly use court processes by attempting to gain information about hundreds of IP addresses located all over the country in a single action, especially when many of those addresses fall outside of the court's jurisdiction. Accordingly, the motion to compel is denied with respect to the all of the subpoenas in which the plaintiffs are seeking the identity associated with non-party IP addresses. *Consolidated Order* at 11.

Tangentially, the court pointed out that besides, "improperly us[ing] court processes," plaintiff's tactics had denied the federal courts necessary operational revenue. Judge Holderman cited another court that had made the same determination: "No predicate has been shown for thus combining 300 separate actions on the cheap – if [defendant] had sued the 300 claimed infringers

---

[6] The three similar cases were: *Pac. Century Int'l, Ltd v. Unknown*, No. 2:11-cv-03479-KJM-JFM (E.D. Cal. Jan. 5, 2012); *Hard Drive Prods., Inc. v. Unknown*, No. 2:11-cv-3476-MCE-CKD (E.D. Cal. Jan. 5, 2012); and, *First Time Videos, LLC v. John Doe*, No. 2:11-cv-00690-MSD-FBS (E.D. Va. Jan. 4, 2012).

separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350." *Id*. n.15. By this calculus, Plaintiff Millennium TGA, Inc. has denied this Court in excess of $328,000 in filing fees.

16.     This Court must not sanction the practice of making mere allegations against a party, or potential party, and then undertaking a coercive fishing expedition in the hopes of finding evidence to assert a potential claim. *Jackson v. BellSouth Telecomm., Inc.*, 2002 WL 34382751, at *6 (S.D. Fla. June 4, 2002). While the subpoena that underlies discovery in this case was issued under the imprimatur of the U.S. District Court for the District of Columbia, this Court has broad discretionary power to grant non-party Jane Doe 2's Motion for Protective Order and fashion a protective order pursuant to Rule 26(c). *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). It is well settled that a motion for protective order may be made in the court in which the action is pending. *See, e.g.*, 8A Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Civ.* § 2035 (3d ed.). *See also Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431 (M.D.N.C. 2001) (in specifically addressing the interplay of Rule 26(c) and Rule 45, the court stated it has the *right and responsibility* to control the broad outline of discovery) (emphasis added). This Court retains authority to control the discovery it authorized in its Order granting early discovery whether the subpoena was issued under the imprimatur of this Court or any other court. Rule 26 permits the Court to freely issue protective orders when deemed appropriate. Rule 45 does not diminish this right. Thus, this Court should find that a Rule 26(c) protective order is both appropriate and warranted.

## CONCLUSION

Plaintiff's request for information is nothing more than yet another unjustified "fishing expedition" that will cause reputational injury, prejudice, and undue burden to non-party Jane

Doe 2, and hundreds of other Does, if allowed to proceed. Plaintiff's overbroad discovery request is one in a long line of such requests foisted on the Federal Courts, including at least eighteen times in the Courts in this District, the aim of which has never been to assert the legitimate rights of copyright holders in a court of law. This is nothing more than a mass collection scheme aimed at extracting the highest monetary recovery out of non-party Jane Doe 2 and 937 other non-party Does. Good cause thus exists to grant a protective order preventing the production of personally identifying information non-party Jane Doe 2 and all other similarly situated non-party Does by the Custodian of Records, Comcast Cable Communications, LLC.

Respectfully submitted,

This 28th day of May, 2012.

/s/
William R. Lovin
SBN: TX 24076519
Appearing Pro Hac Vice

**William Lovin & Assoc., LLC**
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
Tel: 469-252-7007
Fax: 469-252-7008
Email: wlovin@williamlovin.com

## CERTIFICATE OF SERVICE

This is to certify that a true, correct and complete copy of the foregoing Motion for Protective Order was filed with the Clerk of Court using the CM/ECF system which will send a notification of such filing to counsel of record:

Douglas M. McIntyre, Esq.
720 N. Post Oak Rd.
Suite 610
Houston, TX 77024
713-365-9886