## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

_____
                                     )

MILLENNIUM TGA, INC.          )
                                       )

Plaintiff,                     )      Case No. 4:11-cv-04501
                                       )

v.                                  )
                                       )

JOHN DOE, *et al.*             )
                                       )

Defendants.            )
_____ )

### CONSOLIDATED MOTION AND MEMORANDUM OF LAW IN SUPPORT FOR COSTS AND ATTORNEY'S FEES PURSUANT TO FED. R. CIV. P. 54(d) AND 17 U.S.C. § 505

Movant John Doe 112 (IP Address 184.155.204.241) ("Movant") is a prevailing party entitled to attorney's fees pursuant to Federal Rule of Civil Procedure 54(d) and 17 U.S.C. § 505. Awarding costs to Movant including a reasonable attorney's fee is a proper exercise of this Court's discretion, for the reasons and in the amounts set forth below.

### FACTUAL BACKGROUND

Movant relies upon the factual background section of the memorandum of law in support of Movant's Rule 59(e) motion, and hereby incorporates that statement as though fully stated herein. ECF No. 127 pp. 1-4. In addition, Movant provides the following facts.

Plaintiff Millennium TGA, Inc. ("Plaintiff") purported to "voluntarily dismiss[] the action in its entirety without prejudice" by a Notice of Voluntary Dismissal of Action on December 14, 2012. ECF No. 122. The Court entered an Order of Dismissal the same day, also stating that the dismissal was without prejudice. ECF No. 123. On January 11, 2013, Movant filed a Motion to Alter or Amend the Judgment Pursuant to Fed. Civ. P. 59(e) ("Rule 59(e) motion") noting that Plaintiff's dismissal, as its second voluntary dismissal of its claim, operates as an adjudication on the merits under Rule 41 (a)(1)(B), and was therefore with prejudice. ECF No. 126. On February 19, 2013, the Court amended its order, and entered final judgment "[u]pon consideration of Defendant's Motion to Alter and Amend Judgment, and the entire record herein." ECF No. 134.

Two other Does, alleged like Movant to be Defendant John Doe's co-conspirators, made filings on the docket after Movant's Rule 59(e) motion. First, on January 11, 2013, Defendant John

Doe (I.P. Address 50.46.205.98) moved for costs and fees pursuant to 17 U.S.C. § 505. ECF No. 128. Plaintiff filed an opposition in response. ECF No. 130. The Court denied the motion. ECF No. 135. Second, on January 28, 2013, counsel for Doe IP Address 72.207.240.160 notified the Court that Plaintiff's counsel had privately declared its intention, despite the Court's protective order, to "proceed individually against [Doe IP Address 72.207.240.160] using the personal information [Plaintiff] obtained during the course of this action." ECF No. 131. Plaintiff sued a few of the alleged co-conspirators as named defendants prior to noticing its second dismissal. After and despite its dismissal with prejudice, Plaintiff moved for default judgment against three named defendants based on acts of infringement previously alleged in both dismissed actions.[1]

## LEGAL AUTHORITY

"After the termination of an action, a court may 'consider collateral issues.'" *Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)). "As a general rule, final judgment terminates litigation on the merits and leaves the district court with nothing to do except execute the judgment ... [but] the district court is not precluded from ruling on the attorney fees issue by … its final judgment …" *United Indus. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 764 (5th Cir. 1996).

Section 505 of the Copyright Act provides,

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

"Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only in the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (adopting "even-handed approach" to Section 505); *see id.* at 534-35 (reversing judgment that held "prevailing defendant [] to a more stringent standard than that applicable to a prevailing plaintiff"). "*Fogerty* instructed courts, in determining whether to award attorney's fees, to consider 1) frivolousness, 2) motivation, 3) objective unreasonableness, and 4) the need in particular

---

[1] *See* P.'s Mot. for Default J., *Millennium TGA, Inc. v. Lemnitzer*, No. 12-cv-2141 (D. Ariz. Jan. 15, 2013); P.'s Mot. for Default J., *Millennium TGA, Inc. v. Velasco*, No. 12-cv-2146 (D. Ariz. Jan. 15, 2013); P.'s Mot. for Default J., *Millennium TGA, Inc. v. Michuta*, 12-cv-2143 (D. Ariz. Jan. 15, 2013); *see also Michuta*, 2013 U.S. Dist. LEXIS 24490 (D. Ariz. Feb. 22, 2013) (granting default judgment).

circumstances to advance considerations of compensation and deterrence." *Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 423 (5th Cir. 2005) (vacating Section 505 award and instructing district court to "provide a *Fogerty* analysis" on remand) (citing *Fogerty*, 510 U.S. at 534 n. 19.). However, the Court is not required to apply the *Fogerty* factors verbatim. *Compaq Computer Corp. v. Ergonome Inc*., 387 F.3d 403, 412 (5th Cir. 2004).

"Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely." *McGaughey v. Twentieth Century Fox Television Corp*., 12 F.3d 62, 65 (5th Cir. 1994) (affirming award to defendants) (quoting *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985)). *See also Hogan Sys., Inc. v. Cybresource Int'l, Inc*., 158 F.3d 319, 325 (5th Cir. 1988) (discussing "the Fifth Circuit's 'discretionary but routinely awarded' *McGaughey* standard"); *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 141, 147 (5th Cir. 2004) (*per curiam*).

"As a matter of course, costs are allowed to the prevailing party unless the court otherwise directs." *Collins v. Union Carbide Corp., Chem. Div.*, 52 F.R.D. 208, 209 (S.D. Tex. 1971) (citing Rule 54(d) and 6 Moore's Federal Practice §§ 54.70 et seq.); *see also id.* ("The instant case presents no occasion for departure from the general rule. Between these parties, the equities are clear as to which should bear the burden … Defendant did nothing save be sued, and should not be penalized for having defended itself.").

## ARGUMENT

The Court granted Movant's motion and dismissed Plaintiff's claims with prejudice. As a prevailing party, Movant qualifies for attorney's fees, which are fully warranted under *Fogerty*.

**I.   The Court May Award Recovery of Full Costs in Its Discretion.**

In a copyright case, "the court in its discretion may allow the recovery of full costs by or against any party …" 17 U.S.C. § 505. "The presumption that the prevailing party will be awarded costs cannot be overcome absent a showing of good cause for doing so." *Valis v. Police Dep't*, No. 96-cv-5283, 1999 U.S. Dist. LEXIS 16423, *4 (S.D.N.Y. Oct. 20, 1999). "Courts have routinely held that the award of full costs under the Copyright Act is mandatory." *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 812 (E.D. Mich. 2000). The Act's disjunctive use of the word "or" indicates that "recovery by or against any party" may be granted to a non-party, so long as the recovery is against a party. Rule 54(d) does "not create an exception for costs incurred or paid by a

non-party, or limit recovery to those costs that a prevailing party has incurred or paid itself." *Kevin M. Ehrlinger Enters., Inc. v. McData Servs. Corp.*, No. 06-cv-812-L, 2012 U.S. Dist. LEXIS 70460, *5 (N.D. Tex. May 21, 2012), *adopting id.*, 2012 U.S. Dist. LEXIS 70463, *8 (N.D. Tex. Apr. 30, 2012) (collecting cases).[2] Allowing recovery to Movant in this case is appropriate.

## II.  Movant Is a Prevailing Party Under the Copyright Act.

### A.  The Term "Prevailing Party" Is Not Expressly Defined in the Copyright Act.

"Only 'the prevailing party' is eligible for an award of attorney's fees." 4 Nimmer on Copyright § 14.10[B][3], at 14-202 (2010) (quoting 17 U.S.C. § 505). "The Copyright Act assumes the term to be self-defining, so that in ambiguous situations, reference must be made to applicable case law." *Id.* Nothing in the Copyright Act defines the term "prevailing party." *Compare Estate of Palumbo v. United States*, 675 F.3d 234, 236 (3d Cir. 2012) (quoting definition of "prevailing party" in 26 U.S.C. § 7430(c)(4)(A)). "The Copyright Act does not define prevailing party, and thus general principles of law apply." Patry on Copyright § 22:211, at 22-495 (2010).

### B.  A "Prevailing Party" Is One Who Obtains Actual Relief on the Merits of the Claim.

"Numerous federal statutes allow courts to award attorney's fees and costs to the 'prevailing party.'" *Buckhannon Board & Care Home, Inc. v. W.V. Dep't of Health and Human Res.*, 532 U.S. 598, 600 (2001). "In designating those parties eligible for an award of litigation costs, Congress employed the term 'prevailing party,' a legal term of art." *Id.* at 603 (interpreting FHAA and ADA). The *Buckhannon* Court approvingly quoted Black's definition of "prevailing party" as "[a] party in whose favor judgment is rendered, regardless of the amount of damages awarded (in certain cases, the court will award attorney's fees to the prevailing party).—Also termed *successful party*." *Id.* (quoting Black's Law Dictionary 1145 (7th ed. 1999)). "This [Black's] view that a 'prevailing party' is one who has been awarded some relief by the court can be distilled from our prior cases." *Id.*

Where a statute offers no definition for "prevailing party," the Fifth Circuit is "guided by the extensive case law interpreting that concept." *Yousuf v. Motiva Enters. LLC*, 246 Fed. App'x 891, 893 (5th Cir. 2007) (citing *Buckhannon*). "The definition of 'prevailing party' does not differ from rule-to-rule or statute-to-statute." *Schultz v. United States*, 918 F.2d 164, 166 n.2 (Fed. Cir. 1990), quoted with approval by *Humphrey v. United Way of the Tex. Gulf Coast*, 802 F.Supp. 2d 847, 868 (S.D. Tex.

---

[2] *See also, Jones v. United States*, 505 F. Supp. 781, 784 (E.D. Tex. 1980); *ABC, Inc. v. Primetime 24, J.V.*, 67 F. Supp. 2d 558, 562 (M.D.N.C. 1999) (copyright case).

2011).[3] "[A]fter *Buckhannon*, whether a party is a prevailing party 'is a legal question subject to *de novo* review.'" *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422-23 (5th Cir. 2009) (quoting *Bailey v. Mississippi*, 407 F.3d 684, 687 (5th Cir. 2005)). "[A] litigant must obtain some judicial imprimatur on a material alteration of the legal relationship between the parties in order to be a prevailing party." *Id.* at 422. "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Sch. Dist.*, 489 U.S. 782, 792-93 (1989). The Fifth Circuit

> has held that to be deemed a 'prevailing party,' at a minimum, a plaintiff must receive some relief on the merits of his claim. … In addition, we have determined that for a party to qualify as a prevailing party it must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.

*Id.* at 893, quoting *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006).

### C. Movant Prevailed Over Plaintiff by Securing Judgment on the Merits.

It is beyond cavil that Movant prevailed over Plaintiff in all material respects. Before Movant's Rule 59(e) motion, judgment had been entered "without prejudice," i.e., not on the merits, based on Plaintiff's voluntary dismissal. A first voluntary dismissal is without prejudice unless otherwise stipulated. *See Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009). But "[a] second notice of dismissal not only closes the file, it also closes the case with prejudice to the bringing of another." *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

"Although there has not been an adjudication on the merits in the sense of a weighing of facts, there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata*. As such, [defendant] has clearly prevailed in this litigation." *Anthony v. Marion County Gen. Hosp.*, 617 F.2d 1164, 1169-70 (5th Cir. 1980).[4] Movant secured dismissal with a *res judicata* effect that materially and permanently alters the legal relationship between

---

[3] *But cf. Bhandari v. First Nat'l Bank of Commerce*, 808 F.2d 1082, 1097 n. 40 (5th Cir. 1990) ("'prevailing party' in civil rights statutes awarding attorneys' fees to 'prevailing party' means one thing as to party plaintiff, another as to party defendant") (citing *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)).

[4] *See also, Astron Indus. Ass'n v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir. 1968); *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985) (vacating denial of attorney's fees to defendant); *United States v. $13,275.21, More or Less, in United States Currency*, No. SA-06-CA-171, 2007 U.S. Dist. LEXIS 6958, *5 n.1 (W.D. Tex. Jan. 31, 2007) (citing *Schwarz*, 767 F.2d at 131); *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2002).

5

Plaintiff and Movant. "[E]nforceable judgments on the merits … create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees.'" *Buckhannon*, 532 U.S. at 604 (quoting *Texas State Teachers Ass'n*, 489 U.S. at 792-93).

Dismissal with prejudice, voluntary or otherwise, confers prevailing party status under the Copyright Act. "There is no question that a dismissal with prejudice makes the defendant the prevailing party for purposes of an award of attorney's fees under § 505. … This is no less true when a case is dismissed because the plaintiff 'threw in the towel'—that is, where the dismissal is on the plaintiff's own motion." *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1099 (7th Cir. 2008). "As this court ordered dismissal with prejudice ... the court changed the legal relationship between Defendant and Plaintiff because Plaintiff cannot bring these claims against Defendant again." *Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, No. 04-cv-00010, 2006 U.S. Dist. LEXIS 7713, *5 (M.D.N.C. Feb. 8, 2006) (awarding Section 505 attorney's fees to defendant).[5]

### D. A "Prevailing Party" Need Not Be Designated as a Party to the Action.

Nothing in the Copyright Act or in jurisprudence interpreting the term "prevailing party" requires the term be limited to a "party to the action." The term "party," may be understood to refer to a party to the dispute, or a party to the change obtained in the legal relationship, or as one who participates in a lawsuit in some capacity. *Ward v. Siebel Living Trust*, 449 Fed. App'x 747, 750 (10th Cir. 2011) (finding "prevailing party" means "the party that prevails as between the parties to the contract," rather than "the party that prevailed in the lawsuit as a whole").

The material alteration of the relationship is the "touchstone of the prevailing party inquiry." *Texas State Teachers Ass'n*, 489 U.S. at 792-93. Accordingly, the inquiry has focused more on the degree of success required to prevail than on the type of party who qualifies.[6]

---

[5] *See also Ninox Television Ltd. v. Fox Entm't Grp., Inc.*, No. 04-cv-7891, 2006 U.S. Dist. LEXIS 38868 (S.D.N.Y. June 13, 2006) (defendant prevailed upon a stipulated dismissal with prejudice); *Tavory v. NTP, Inc.*, 297 Fed. App'x 986, 989-90 (Fed. Cir. Oct. 28, 2008) (dismissal that precludes plaintiff from asserting copyright claim based on the same facts materially alters relationship of the parties); *Hyperquest, Inc. v. N'Site Solutions, Inc.*, No. 08-cv-483, 2008 U.S. Dist. LEXIS 88752, *4 n.1 (N.D. Ill. Nov. 3, 2008) (awarding fees to defendant who prevailed on plaintiff's lack of standing, which "obviated any need to adjudicate the validity of the copyright or the substantive issues regarding infringement"), *aff'd*, 2011 U.S. App. LEXIS 958 (7th Cir. Jan. 19, 2011).

[6] *See, e.g., United States v. 329.73 Acres of Land*, 704 F.2d 800, 814 (5th Cir. 1983) ("The term 'prevailing party' means a party who wins final victory, not a single round") (interpreting EAJA); *Northwest Airlines v. Flight Trails*, 3 F.3d 292, 297 (8th Cir. 1993) ("'Prevailing party' means the winner of the lawsuit.") (interpreting contractual clause providing default remedies); *Shum v. Intel Corp.*, 629 F.3d 1360, 1367-68 (Fed. Cir. 2010) ("Rule 54 does not allow every party that won on some claims to be deemed a 'prevailing party.' For the purposes of costs and fees, there can be only one winner. A court must choose one, and only one, 'prevailing party' to receive any costs award.").

Under Rule 54(d), "prevailing party" costs may be awarded to a nonparty to the litigation. *Corley v. Rosewood Care Ctr., Inc*., 142 F.3d 1041, 1056 (7th Cir. 1998) (vacating award on other grounds); *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc*., No. 86-cv-0135, 1991 U.S. Dist. LEXIS 17597 (W.D. Mo. Dec. 2, 1991) (nonparty can be awarded attorney's fees and costs to be paid out of a prevailing party award). For example *amici curiae*, who are by definition not parties to a case, may be entitled to attorney's fees if they are "vitally interested in the issues which were before the Court" and their "counsel contributed to … victory." *Russell v. Bd. of Plumbing Exam'rs*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999). This is true even of amici who were specifically denied intervenor status and so were "technically nonparties," but who "carried the litigation to a successful conclusion." *In re Benny*, 81 F.3d 91, 93 (9th Cir. 1996); *see also id.* at 94 (reconsidering denial of intervention and deeming it granted where amici "were, in fact, the prevailing parties within the meaning of the EAJA and are entitled to fees").

The "prevailing party" provision of the Copyright Act does not distinguish between technical "parties" and interested parties who obtain an enforceable, material alteration of the parties' relationship. At the time of dismissal, Plaintiff had not yet designated Movant as a party defendant, but as a co-conspirator who might be joined to the action at a later date. Compl. ¶ 38, ECF No. 1 ("Potential Joinder of Co-Conspirators"). Plaintiff implicated Movant in its claims as a "non-party joint tortfeasor," but declared that naming Movant as a party was "a step that Plaintiff may never choose to take based on its own evaluation of [Movant]'s assertions." ECF No. 95 p. 5. As a party aggrieved and implicated by the action, Movant appeared as an interested party to assert that interest, actively litigating the action sufficiently to be deemed a "prevailing party."

Texas state appellate courts have applied three different definitions to "prevailing party":

The "prevailing party" may be (1) "the party to the suit 'who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention'"; or (2) the party "who is vindicated by the trial court's judgment"; or (3) the "party in whose favor a judgment is rendered."

*Brown v. DFW Pop Rests., LLC*, No. 06-CV-1525-R, 2007 U.S. Dist. LEXIS 52992, at *5-6 (N.D. Tex. July 20, 2007) (quoting *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 564-65 (Tex. App.-Texarkana 2003). Movant satisfies any of those definitions. As noted above, it was Movant who was vindicated by securing an amended judgment to reflect dismissal with prejudice. In the unusual

posture of Plaintiff's John Doe lawsuits, where Movant in fact obtained complete relief from the Court, it is proper for the Court to consider Movant a prevailing party under Section 505.

Plaintiff dismissed its claim to avoid reaching the merits, as is its consistent pattern. Plaintiff has sued thousands of supposed illegal downloaders, but has never reached the merits with any. Plaintiff has only named seventeen defendants as parties, dismissing thirteen of them without serving process and defaulting the other four.[7]  Other than those four defaults, each of Plaintiff's cases consists of only two stages: discovery and settlement. Evidently, Plaintiff could not have achieved a favorable decision on the merits. After stringing along Movant and the Court for nearly a year, Plaintiff could not even prepare and file a Joint Discovery Case Management Plan prior to a routine pre-trial scheduling conference to keep the litigation afloat. See Decl. of Jason Sweet, ECF No. 127-2 ¶¶ 4-7.[8]

### E.   A Nonparty Who Incurs Attorney's Fees in Vindicating Rights that Determine the Rights of Others in a Lawsuit is a "Prevailing Party" Entitled to Attorney's Fees.

A non-party who incurs attorney's fees to vindicate rights that, when prevailed upon, determine the rights of others in a lawsuit, is entitled to attorney's fees as a "prevailing party."

> In [*Young v. Comm'r*, T.C. Memo 2006-189 (T.C. 2006) and *Dixon v. Comm'r*, T.C. Memo 2006-97 (T.C. 2006)], many of the taxpayers had filed petitions in the Tax Court regarding related issues, and had done so because they had rights at stake in the decisions. The petitioners in *Young* and *Dixon* had similar rights in the tax shelter; the resolution of one case, therefore, would determine the legal rights of many others. To that end over 300 nontest case petitioners had contributed to the Defense Fund.

*Estate of Palumbo v. United States*, 675 F.3d 234, 243 (3d Cir. 2012).

> [I]n the context of the EAJA, even though that statute "states plainly that the award is to be made to the 'prevailing party'", "[t]his is not to say that the party named in the lawsuit is invariably the true litigant to whom an award is due." Sisk, "The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part One)," 55 La. L. Rev. 217, 343 (1994); *see, e.g., Grason Elec. Co. v. NLRB*, 951 F.2d 1100 (9th Cir. 1991) (real parties in interest in EAJA case included all 48 members of multiemployer collective bargaining association who financed the litigation, not just the 6 members who were parties to the litigation). **The case for looking beyond the named parties is particularly compelling in these proceedings, where similarly situated taxpayers not only shared the costs of the litigation but also "had rights at stake in the case on the merits".** Sisk, supra at 346 (arguing that one can be a real party in interest with respect to an EAJA fee

---

[7] Before its three Arizona motions for default judgment in January 2013, Plaintiff had moved for default judgment in a New York case in October 2012. Mot. for Default J., *Millennium TGA, Inc. v. Leon*, No. 12-cv-1360 (E.D.N.Y. Oct. 22, 2012).

[8] Plaintiff's decision to dismiss may have been precipitated in part by Movant. Almost a year after the case was filed, Movant notified the Court's case manager that Movant "was never served though his [identifying] information was released [to Plaintiff]. And that a quick review of the docket indicated that none of the [alleged joint tortfeasors] had been served.…" *Id.* ¶ 6. Plaintiff noticed dismissal less than ninety minutes later. *Id.* ¶ 7.

request -- and thereby potentially entitled to recover the requested fees -- only by virtue of one's status as a real party in interest in the underlying litigation on the merits; i.e., that financial responsibility for the claimed legal fees does not confer real party in interest status).

*Dixon v. Comm'r*, T.C. Memo 2006-97 (T.C. 2006) (emphasis added). *See also Russell v. Bd. of Plumbing Exam'rs*, 74 F.Supp.2d 349, 351 (S.D.N.Y. 1999) (*amicus'* counsel's contribution to party's victory "sufficient to justify reasonable compensation and blurs any technical distinction between intervenors and *amici* … To do so will not open the floodgates to litigious meddlers.") This is true even for amici denied intervenor status, who were thus "technically nonparties," but who "carried the litigation to a successful conclusion." *In re Benny*, 81 F.3d 91, 94 (9th Cir. 1996) ("In every respect except the formal designation as parties, the six judges were the real parties in interest in the decision … [their] legal representation won the case, and should be paid for pursuant to the [EAJA].").

### F.  Movant is a "Party" to the Extent Necessary for an Award of Costs and Fees.

Plaintiff has contended that it "only brought this action against a single defendant—John Doe." P.'s Resp. to Mot. to Quash p. 3, ECF No. 13. That belies the true record in this case. Plaintiff identified Movant as one of the 939 defendants in the prior action. Compl. ¶ 8, *Millennium TGA, Inc. v. Does 1-939* (D.D.C. filed Dec. 7, 2011). The two actions are effectively one and the same. "*Millennium I* and *Millennium II* are effectively the same action, although brought in different fora." Mem. Op. and Order p. 3 n.4, *Millennium TGA III* (D.D.C. filed May 29, 2012) (filed in this Court at ECF No. 132-1). [9]

Plaintiff has not treated Movant as an unrelated third party to this litigation, but as a defendant to be named later. Plaintiff put Movant and other unnamed Internet subscribers in a position similar to that occupied by the John Doe defendant in *Millennium TGA Inc. v. John Doe*, No. 11-cv-03080, 2012 U.S. Dist. LEXIS 38636 (E.D. Cal. Mar. 21, 2012), who was named in the complaint but not in its caption: "plaintiff considers the account holder to be a potential defendant who may be substituted for the 'John Doe' defendant in this case rather than a more typical third party, such as an Internet service provider." *Id.* at *8 n.5. Such treatment, by itself, justifies regarding Movant as a party to the extent necessary for "prevailing party" status, and estopping Plaintiff from arguing otherwise. Movant in fact resolved a controversy between himself and Plaintiff, and is no

---

[9] *See also* ECF No. 127 p. 8 (discussing how both cases arise from the same nucleus of operative facts) & p. 11 (discussing how Movant was targeted in both actions).

longer subject to Plaintiff's demands or at risk of litigation over the same claims. But if Movant had not prevailed on the Rule 59(e) motion, Plaintiff might have been able to pursue attorney's fees against Movant, even if it never named Movant as a defendant. *See, e.g., S&R Wrecker Serv., Inc. v. Mecklenburg Cty.*, 652 F. Supp. 527, 528-29 (W.D.N.C. 1987) (awarding attorney's fees to plaintiff as a prevailing party in opposing a non-party's attempts to intervene). It would be inequitable to prevent Movant from pursuing attorney's fees after achieving a total victory.

## III. An Award of Attorney's Fees is Proper in this Case.

### A. The *Fogerty* Factors Support an Award of Attorney's Fees.

The Supreme Court has approved the use of four non-exclusive factors "to guide courts' discretion" in making attorney's fees awards to a prevailing party under the Copyright Act: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 423 (5th Cir. 2005) (vacating copyright attorney's fees award, instructing district court to "provide a *Fogerty* analysis" on remand). Applying the *Fogerty* factors supports an award of attorney's fees.

#### 1. Frivolousness.

"Frivolousness is defined as 'lacking any plausible merit,' *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 126 (2d Cir. 2001), 'either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, 325 … (1989)." *Warren Publ'g Co. v. Spurlock*, No. 08-3399, 2010 U.S. Dist. LEXIS 20584, at *13 (E.D. Pa. Mar. 3, 2010). Attorney's fees awards are proper even when no frivolousness is found. *Edwards v. Red Farm Studio Co.*, 109 F.3d 80 (1st Cir. 1997). Since *Fogerty*, a prevailing defendant need not show that the plaintiff made a frivolous claim to be awarded attorney's fees.[10]

##### a. Arguments about Dismissal without Prejudice and Related Litigation.

After dismissing *Millennium TGA I*, Plaintiff did the same in this action, but filed a notice of dismissal erroneously contending that dismissal was "without prejudice." ECF No. 122. The Court entered judgment without prejudice, but then granted Movant's Rule 59(e) motion to amend. Absent

---

[10] Indeed, the Ninth Circuit had found, before certiorari was granted, that Fantasy's infringement suit was not brought frivolously or in bad faith" (510 U.S. at 520), but on remand after the Court's decision, the Ninth Circuit affirmed the district court's award to the defendant of $1,347,519.15 in attorney's fees. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996).

new evidence or a change in controlling law, a Rule 59(e) motion may be granted only "to correct a clear error of law or prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). For Plaintiff to file a notice of dismissal stating it was without prejudice was therefore frivolous, in the sense of being clearly erroneous and/or manifestly unjust. That frivolous claim necessitated Movant's briefing to demonstrate the error of Plaintiff's position.

Plaintiff's position that *Millennium TGA II* (this action) and *Millennium TGA III* were related cases, but that *Millennium TGA I* and *Millennium TGA III* were not, was rejected by the *Millennium TGA III* Court as "[]not serious[]":

> Millennium cannot seriously dispute that the underlying subject matter—
> Millennium's copyright and its alleged infringement by 939 Does—is the same. ...
> *Millennium I* and *Millennium II* are effectively the same action, although brought in
> different fora...

ECF No. 132-1; Order, *Millennium TGA III*, p. 3 n.4 (D.D.C. filed May 29, 2012).

Here, Plaintiff disputed Rule 41(a)(1)(B)'s application on even more specious grounds, arguing that it did not apply because Plaintiff did not yet know the Defendant's identity. ECF No. 129 p. 3. But the Rule applies upon dismissal of a second "action based on or including the same claim," not necessarily dismissal of the same *defendant*. As Movant has noted, Rule 41(a)(1)(B) "may be invoked … by a non-party who is … in privity with the defendant, or whose interests were implicated by the subject matter of the litigation." ECF No. 127 p. 10.

### b.  Proceeding Against Alleged Tortfeasors after Dismissal with Prejudice.

Plaintiff noticed its second dismissal here on December 14, 2012. On January 15, 2013, in three cases, alleging only acts of infringement previously raised here and in *Millennium TGA I*, Plaintiff moved for default judgment against three of the alleged co-conspirators. *See* n.1 *supra*. Each of those motions, after the second voluntary dismissal, exceeded the court's jurisdiction. Plaintiff has abused the fruits of its discovery in this action beyond the point allowed by the Federal Rules.

It was also frivolous to keep contacting subscribers whose names it obtained in discovery in this case, threatening to sue them. *See* ECF No. 131 ("If Millennium TGA does proceed individually against one or both of my clients, it will be the third time they have been sued."). Any such proceedings would have violated the two-dismissal rule and, likely the Court's protective orders over those subscribers. Also frivolous was Plaintiff's pretense that when it contacted subscribers, it was "engaging in settlement discussions [that were not], in any way, inappropriate." ECF No. 129 p. 8.

### c.   Claims about Standing of Movant and Other Alleged Joint Tortfeasors.

In keeping with Plaintiff's abuse of John Doe practice throughout the action, Plaintiff contends that it spent the last year engaged in a solitary version of litigation. ECF No. 52 p. 3; ECF No. 56 p. 4; ECF No. 101 pp. 1-2; ECF No. 112 p. 1 (each stating, "Movant is not a party to this case as no one has yet been named or served.").[11] The docket reflects otherwise, and Plaintiff's position lacks any possible merit in light of the Article III requirement of a case or controversy; that is, a dispute. If Plaintiff were the only party, the action would have been unripe and the Court would have lacked subject matter jurisdiction. "[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, No. 11-982, 586 U.S. ___, slip op. at 3-4 (Jan. 9, 2013) (internal quotations omitted). "With no defendant there is no case or controversy and thus no jurisdiction for this Court to act." *Whitehead v. Savannah Fire Dep't*, No. CV411-229, 2011 U.S. Dist. LEXIS 128816, *2 (S.D. Ga. Nov. 8, 2011); *Xechem Int'l, Inc. v. Univ. of Texas M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1332 (Fed. Cir. 2004).

Equally frivolous was Plaintiff's argument that it had filed suit against IP addresses, rather than infringers using IP addresses. Plaintiff recognized that this argument was outlandish: "In no way did Plaintiff allege, and in no way would common sense suggest, that it was alleging that the IP addresses themselves committed copyright infringement." ECF No. 129 p. 3. But it embraced that argument on the very next page: "filing suit against an IP address is simply not the same as litigating a claim against an individual. The IP address itself is the only entity which could rightfully claim to have been subject to the two-dismissal rule …" *Id.* p. 4.[12]

### 2.   Motivation.

Plaintiff offers endless examples of its bad faith litigation tactics. Two judges in the *Millennium TGA III* discovery dispute found Plaintiff had engaged in outright judge shopping. Plaintiff has continued to seek improper settlements and judgments on claims twice dismissed, despite Rule 41(a)(1)(B). ECF No. 131; *Millennium TGA, Inc. v. Michuta*, No. CV12-2143, 2013 U.S. Dist. LEXIS 24490 (D. Ariz. Feb. 22, 2013). And Plaintiff's relentless insistence that it could bring suit to obtain discovery without its targets having standing to object, and its disregard for the

---

[11] "In the instant action, however, *there was no party other than Plaintiff*, because the Defendant was an unknown individual designated as John Doe, and the co-conspirators were, similarly, unknown individuals." ECF No.129 p. 7.

[12] *See also* ECF No. 130 p. 3 ("and since Movant is not an IP address, Movant is not entitled to claiming the privilege of the two-dismissal rule").

rules of personal jurisdiction in raising claims against hundreds of disparate tortfeasors in a single action, without granting them party status, served as the scaffolding for an action built on bad faith.

### a.  Judge Shopping.

Plaintiff manifested its bad faith by engaging in blatant "judge shopping" in dismissing *Millennium TGA I* nine days after filing when the case drew Judge Wilkins, who had been known to require a plaintiff in a BitTorrent copyright lawsuit to demonstrate that jurisdiction over the Doe defendants was proper. See ECF No. 22 ¶¶ 13-14 (citing *Nu Image, Inc. v. Doe*, 799 F.Supp.2d 34, 42 (D.D.C. 2011) (Wilkins, J.). The *Millennium TGA III* Court agreed with third party Comcast that Plaintiff's hasty dismissal of *Millennium I* was likely an instance of "judge shopping," as was Plaintiff's failure to list *Millennium TGA I* as a related case when its petition to compel Comcast returned to the same court.

> [M]erely nine days [after filing the *Millennium TGA I* complaint], Millennium voluntarily dismissed the action without explanation. As Comcast opines, a very likely explanation for Millennium's dismissal – especially in light of Millennium's subsequent actions – is that the [Judge assigned to the original action] had previously imposed restrictions upon plaintiffs who had brought a similar copyright infringement case, and Millennium therefore preferred to litigate before what it considered to be a more favorable forum. …

> [The Judge to whom *Millennium TGA III* was randomly assigned] easily determined that *Millennium TGA I* and *Millennium TGA III* were related cases under our local rules, describing Plaintiff's actions [in not listing *Millennium TGA I* as a related case] as akin to "judge shopping." … This Court could not agree more.

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 9-10 (D.D.C. 2012).

Judge shopping "is a manifestly 'improper purpose'" that supports a finding of bad faith. *Lewis v. Smith*, 480 Fed. App'x 696, 699 (3d Cir. 2012). "[J]udge shopping … would be devious, and complete bad faith on the part of the [] attorneys." *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1164 (5th Cir. 1982) (declining to find bad faith in the absence of a district court finding).

### b.  Improper and Coercive Settlement Demands.

Plaintiff suggested that "[a]n informal meet and confer" with unrepresented Internet subscribers would be proper. ECF No. 52 p. 4. This informal "discovery" is not supported under Rule 26(f). *Millennium TGA, Inc. v. John Doe*, No. 11-cv-03080, 2012 U.S. Dist. LEXIS 7515, at *13-14 (E.D. Cal. Jan. 23, 2012) (denying Plaintiff's motion to depose potential defendant before Rule 26 conference, who might "unwarily incriminate himself on the record before he has even been named as a defendant and served with process"). Such pre-hearing discovery seems engineered to result in

settlements regardless of guilt. These bad faith litigation tactics were detailed by the *Millennium TGA III* Court, describing a settlement letter sent by Plaintiff's counsel in another matter.

> The burden to nonparty subscribers is also due serious consideration because of what is likely to transpire once Plaintiff's counsel obtains the identifying information of the subscribers…. the present counsel sent the subscriber a settlement demand letter for $3400 and an unsigned memorandum containing a purported legal analysis of why asserting certain defenses to the copyright infringement action would be futile…. The subscriber was also sent a "document hold" letter demanding that he not delete any Internet history, files or emails on his computer, that he not delete, install or update any software program on his computer, and even that he not delete any voicemail messages or data on his cell phones or Personal Digital Assistant devices. … Plaintiff's counsel even warned of sanctions and civil liability if spoliation were to occur. … The potential burden of such a data preservation demand takes greater significance when **the record in this case indicates that the lawyers representing Plaintiff in this case commonly bring these BitTorrent copyright actions, seek identifying information, keep the case pending for several months, and then never prosecute the lawsuit against those subscribers who do not settle with them**…. **Given the intimidating tactics and oppressive demands made by Plaintiff's counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed according to the federal rules and only allow discovery related to valid claims that can and actually will be prosecuted in the federal court where the claims have been filed**.

Mem. Op. & Order, *Millennium TGA III*, 286 F.R.D. 8, 14-15 (D.D.C. filed June 25, 2012) (emphasis added) (footnotes omitted) (filed as ECF No. 78-1 in this action).

That discovery, so necessary to obtaining shakedown settlements, has now been revealed as Plaintiff's only true goal for this abandoned action. Plaintiff bided its time, letting almost a year pass without amending the complaint to name or serve any defendant, while more subscribers' names rolled in from the subpoenas, and more settlements rolled in from the subscribers. Plaintiff unreasonably delayed the proceedings, allowing it to continue to threaten hundreds of Internet subscribers as "on notice of his [or her] potential status as a party defendant," *Id.*; see also ECF No. 46 p. 3 (same). Its voluminous motion practice was little more than a smokescreen, used as a pretext to keep coercing settlements and to persuade the Court to grant further extensions of time to serve.[13] *See generally Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 896 (6th Cir. 2004) (affirming fees granted against copyright plaintiff; "the litigation was undertaken and prosecuted in a fashion that would multiply the fees and encourage nuisance settlement"); *Mick Haig Prods., E.K. v.*

---

[13] *See, e.g.*, ECF No. 8 (filed Mar. 12, 2012) (extension to July 6, 2012); ECF No. 86 (filed July 5, 2012) (extension to September 7, 2012); ECF No. 103 (filed Sept. 4, 2012) (extension to November 23, 2012); *see also* ECF No. 103 (filed Sept. 4, 2012) (extension by the Court to December 14, 2012); ECF No. 115 (filed Nov. 13, 2012) (notice of resetting initial conference to December 14, 2012); ECF No. 121 (filed Dec. 5, 2012) (notice of resetting initial conference to December 14, 2012).

*Does 1-670*, 687 F.3d 649 (5th Cir. 2012) (affirming sanctions including attorney's fees against counsel for plaintiff in mass BitTorrent copyright litigation).

### c.   Delaying Proceedings to Maximize Settlements.

The entire structure of this case was in bad faith. Plaintiff's first stab at this case in *Millennium TGA I* was comparatively straightforward: one plaintiff suing John Doe defendants in a single action, based on allegations of interdependent copyright infringement. Of course, even such copyright cases, in which all interested parties are in fact identified as parties, may be used for improper ends. The Fifth Circuit has affirmed sanctions against a copyright plaintiff's counsel who

> attempt[ed] to repeat his strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars--a tactic that he has employed all across the state and that has been replicated by others across the country.

*Mick Haig Prods.*, 687 F.3d at 652.[14]

But Plaintiff devised a one-party structure for this lawsuit that was rife with opportunities for mischief and abuse. After dismissing *Millennium TGA I*, Plaintiff had a more Byzantine gauntlet for its subpoena targets to travel if they hoped to challenge Plaintiffs' threats to their privacy. In this Court, Plaintiff maintained that a single Doe defendant somehow conspired with 938 others, but that none of the 938 were defendants; according to Plaintiff, even the titular John Doe would not be a defendant unless and until served. If Plaintiff had, in good faith, amended to name any alleged infringer as defendants, the statute of limitations may have been tolled. *Lawrence v. St. Bernard Police Dep't*, No. 99-cv-3494, 2000 U.S. Dist. LEXIS 18315, *4 (E.D. La. Nov. 28, 2000) ("Making the same allegations against each of the defendants is sufficient to give rise to a joint tortfeasor relationship between the original defendants and the later named defendant.").

Plaintiff also argued that it was entitled to a lopsided structure in which no alleged infringer had standing to contest discovery, jurisdiction, or the merits. *See, e.g.*, ECF No. 50 p. 2; ECF No. 47 p. 5; ECF No. 95 p. 6. In bad faith, Plaintiff sought to withhold the means for opposing parties to defend their rights. As Plaintiff stated in response to Movant's motion to quash: "The proper time to

---

[14] In *Mick Haig*, the Fifth Circuit quoted with approval *Raw Films, Ltd. v. Does 1-32*, No. 11-cv-532, 2011 U.S. Dist. LEXIS 114996 (E.D. Va. Oct. 5, 2011), admonishing plaintiffs who "have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does." *Id.* at *7 (finding such conduct "indicates an improper purpose for the suits").

raise these arguments [on the merits] is after Movant has actually been identified and named as a party in this lawsuit—the latter being a step that Plaintiff may never choose to take based on its own evaluation of Movant's assertions." ECF No. 95 p. 5. The obvious conclusion is that, in Plaintiff's solitary litigation/discovery model, "never" is the proper time to raise arguments against Plaintiff. Civil procedure cannot sustain such imbalance. *See* Fed. R. Civ. P. 1.

### d.   Disregarding Jurisdictional Requirements.

Plaintiff sought discovery over alleged tortfeasors from across the country in one court, knowing the inconvenience to its disparate targets made them that much more likely to settle claims. The *Millennium TGA III* Court spoke directly to the Plaintiffs' unusual pleading structure in this action as it described a case that, while technically legal, was still an abuse of process:

> Just as it is improper under Rule 45 to subject non-parties to undue expense, it is also improper to subject non-parties to the undue inconvenience of litigating in a distant forum. A classic example of such an "abuse of subpoena" is described by a case cited approvingly in the Advisory Committee Notes to Rule 45. *See Board of Ed. v. Farmingdale Classroom Tech. Ass'n*, 343 N.E.2d 278 (N.Y. 1975) (cited in the 1991 Advisory Committee Notes to Fed. R. Civ. P. 45). In *Farmingdale*, the court held that **abuse of process occurs when a party manipulates the circumstances to serve process in an inconvenient forum for the persons who must respond, even if it is technically legal to proceed in that forum, because "such trickery and cunning [is] 'degrading to an honorable profession, and well calculated to bring the administration of justice into reproach and contempt. . . .'"** *Id.* at 282 (quoting *Dishaw v. Wadleigh*, 44 N.Y.S. 207, 209 (S.D. Dep't 1897)). For these reasons, our circuit court has held that "nonparty witness territorial convenience" is a valid factor to consider on a motion for a protective order in connection with a Rule 45 subpoena. *In re Sealed Case*, 141 F.3d 337, 343 (D.C. Cir. 1998).

*Millennium TGA III*, 286 F.R.D. at 11 (emphasis added) (ECF No. 78-1 in this action).

### 3.   Objective Unreasonableness.

### a.   Advocating Contradictory Positions.

It is objectively unreasonable, and indicative of bad faith, for Plaintiff to argue two contradictory positions in the same case, depending on which suits its needs. Plaintiff has changed its story repeatedly during this litigation on multiple subjects, including where and how alleged co-conspirators might contest Plaintiff's subpoenas, and the reliability of geolocation technology.

Plaintiff drafted a proposed order for the Court on its motion to expedite discovery, stating, "[s]ubscribers shall have thirty (30) days from the date of notice of the subpoena upon them to file any motions in this Court to contest the subpoena." Proposed Order ¶ 5, ECF No. 2-2 (Dec. 21, 2011); Order ¶ 5, ECF No. 6 (Feb. 9, 2012).

> Thus, the discovery order from the Texas court purported to set terms and conditions for compliance with any future subpoena, and it even specified that objections were required to be filed in Texas, rather than with the court from which any subpoena issued. The order has caused considerable confusion, as over a dozen ISP subscribers have followed the mandate of the Order and filed letters, objections, motions for protective orders and motions to quash in the Texas court.

*Millennium TGA III*, 286 F.R.D. at 13 (ECF No. 78-1 in this action). Despite drafting that motion, Plaintiff argued that none of the movants who did file objections to subpoenas in this Court had standing to do so, and that most had objected in the wrong court. *See* ECF No. 52 p. 3 ("Movant Has Brought His Motion Before the Wrong Court"); ECF No. 53 p. 1, ECF No. 77 p. 2, & ECF No. 95 p. 2 (same); *see also* ECF No. 46 p. 2 ("Movant's Motion is Not Before the Proper Court"); ECF No. 47 p. 2, ECF No. 55 p. 2, ECF No. 56 p. 2, & ECF No. 58 p. 2 (same). Plaintiff's misdirection needlessly multiplied the proceedings, further taxing resources of the movants. Even after the *Millennium TGA III* Court pointed out this "error committed by the Plaintiff," 286 F.R.D. at 13 (D.D.C. June 25, 2012), Plaintiff continued to argue the point. Responding to Movant's motion to quash, Plaintiff again declared, "Movant Has Brought His Motion Before the Wrong Court," terming this a "Fatal Procedural Defect." ECF No. 95 p.2 (July 13, 2012). It was objectively unreasonable for Plaintiff to contest a procedure that it sought to foster.

Plaintiff employed discovery in this action over hundreds of out-of-state Internet subscribers, conceding that they might not be subject to personal jurisdiction but alleging that Plaintiff might seek leave to add some of those subscribers as defendants "so long as the Court has jurisdiction over those individuals." Compl. ¶ 38, ECF No. 1. Plaintiff was willfully blind as to the location of those Does. "Plaintiff used available geo-location technology to trace the IP address of John Doe to a point of origin within the State of Texas." *Id.* ¶ 6. But Plaintiff contended that the same technology could not reliably determine whether the remaining 938 Does were at locations subject to personal jurisdiction. ECF No. 95 pp. 7-8. Either it was improper for Plaintiff to assert jurisdiction was proper for the named defendant based on geolocation technology, or it was improper for Plaintiff to assert that the same technology was insufficient to determine whether the other alleged tortfeasors were within the jurisdiction. Arguing two contradictory positions in the same case evidences bad faith.

**b. Misleading Quotations.**

In responding to multiple Does' motions to quash, Plaintiff argued that the Does had no standing to quash third-party subpoenas served on their Internet service providers, citing to *Windsor*

17

*v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997), providing a partial quotation that deliberately read out of the case's holdings any reference to a right to privacy. *See, e.g.*, ECF No. 11 p. 4. Plaintiff misleadingly neglected to provide the full quotation, omitting the entire second sentence, in which other grounds are recognized:

> The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought. *A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable.*

*Id.* (citations omitted; emphasis added).[15] Plaintiff acted as though no right to privacy exists on other occasions, repeatedly arguing,

> When a subpoena is directed to a nonparty, any motion to quash or modify the subpoena generally must be brought by that nonparty. … The *only* exception to this general rule applicable here is a claim of privilege.

ECF No. 95 p. 2 (emphasis added) (citations omitted); ECF No. 46 p. 2, ECF No. 47 p. 2, ECF No. 57 p. 3, ECF No. 58 p. 2 & ECF No. 77 p.2 (same).

By Plaintiff's logic, only the Internet service providers could object to Plaintiff's subpoenas, not their individual subscribers. To the contrary, the *Millennium TGA III* Court held that Internet subscribers have standing to object to a subpoena where their privacy interests may be affected.

> [T]he burden and inconvenience not just to Comcast, but also to the third-party Comcast subscribers, is a relevant consideration, since those subscribers have a privacy interest in the information sought by Millennium. The district court has an obligation to allow third parties to be heard when their privacy or other rights may be affected by enforcement of the subpoena.

> *Millennium TGA III*, 286 F.R.D. at 12 (citations omitted) (ECF No. 78-1 in this action).

### c. Willful Blindness Toward Rule 41(a)(1)(B).

Furthermore, it was facile for Plaintiff to proceed against non-Texans in this action, contending that if an alleged co-conspirator "is not located in the Southern District of Texas … Plaintiff will not name and serve him *in this case*." ECF No. 95 p. 7 (emphasis added). Plaintiff may have accepted that it had no personal jurisdiction over copyright claims against out-of-state residents, who made up the vast majority of the listed Does. *See Millennium TGA III*, 286 F.R.D. 14 n. 7 ("As to any potential Doe defendants linked to Comcast subscribers residing outside of Texas, it is also

---

[15] This was not Plaintiff's only foray into misleadingly selective quotation. As third-party Internet service provider Comcast pointed out to this Court, Plaintiff mischaracterized, "through its selective and fragmented quotation," the terms of the *Millennium TGA III* Court's ruling limiting the discovery available about 350 of the 938 alleged co-conspirators. *See* ECF No. 94 ¶¶ 2-3.

unlikely that Plaintiff can prosecute a copyright claim against them in the *Millennium TGA II* lawsuit."). If Plaintiff somehow envisioned dismissing claims this action to start anew with select defendants in proper jurisdictions, its plan to do so after a prior dismissal faced the insurmountable hurdle of Rule 41(a)(1)(B)'s two dismissal rule. Where Plaintiff had no capacity to sue a third time out of state, raising any claims against anyone with a non-Texas IP address was objectively unreasonable. After Plaintiff dismissed the claim twice, no further actions on the claim should have been considered. Instead, Plaintiff has proceeded to act on the claim after the second dismissal, seeking judgments and settlements as if Rule 41 does not mean what it says.

### d.   Willful Blindness Toward Alleged Co-Conspirators.

Perhaps caught up in wishing away the rights and interests of its targets, Plaintiff stretched its argument against standing to an argument against existence. Contending that a movant identified by IP Address 50.46.205.98 lacked standing to move for attorney's fees, Plaintiff pointed out, "there has been *no* confirmation that this individual even exists." ECF No. 130 p. 2. Whatever one makes of a movant's arguments, it is objectively unreasonable, if not frivolous, to speculate that the movant does not exist. The Fifth Circuit has affirmed attorney fee awards

### 4.   Compensation and Deterrence.

"When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Assessment Techs. of WI, LLC v. WIREdata, Inc*., 361 F.3d 434, 437 (7th Cir. 2004). "For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights." *Id.* Therefore, deterring overzealous plaintiffs, *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 147-48 (5th Cir. 2004), or deterring "misuse of the Court's resources," *Bridgeport Music, Inc. v. Diamond Time*, 371 F.3d 883, 895 (6th Cir. 2004), are appropriate grounds for awarding attorney's fees. *See also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 627 (6th Cir. 2004) (even where plaintiff's theory of the case is objectively reasonable, award may be proper against its "overly aggressive, take-no-prisoners litigation tactics"). Movant moved to quash in part because production would be improper "if there is no legal proceeding contemplated." ECF No. 79 p. 7. Plaintiff's notice of dimissal obtained that improper result. An award of attorney's fees should be awarded to deter Plaintiff from filing further pretextual claims.

**CONCLUSION**

Of Plaintiff's frivolous and objectively unreasonable arguments, one of the most significant was its claim to dismiss without prejudice. Filing the claim by notice, rather than by motion, snookered the Court into entering judgment on those erroneous grounds, and necessitated Movant's motion to correct the clear error. Movant should be compensated pursuant to Federal Rule of Civil Procedure 54(d) and 17 U.S.C. § 505 for achieving an adjudication on the merits for all 939 alleged tortfeasors in this action.

Should the Court grant Movant attorney's fees, Movant, at that time, will submit a statement of costs in compliance with the rules of the Court.


Dated: March 5, 2013

Respectfully,


/s/ Jason E. Sweet
_____
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

/s/ Jason E. Sweet

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)**

I, Jason Sweet, hereby certify that on March 4, 2013, I called and attempted to speak with counsel for Plaintiff Millennium TGA in a good faith attempt to resolve or narrow the issues raised in this motion, but was unable to reach him.

/s/ Jason E. Sweet